UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CLAUDE A. STATEN,

                              Plaintiff,

        v.

THE VILLAGE OF MONTICELLO, and
THE TOWN OF THOMPSON SULLIVAN
COUNTY,

                              Defendants.

---

No. 14-CV-4766 (KMK)

OPINION AND ORDER

Appearances:

Claude A. Staten
Middletown, NY
*Pro Se Plaintiff*

Alana R. Bartley, Esq.
Drake, Loeb, Heller, Kennedy, Gogerty, Gaba & Rodd, PLLC
New Windsor, NY
*Counsel for Defendant*

Kimberly Hunt Lee, Esq.
McCabe & Mack LLP
Poughkeepsie, NY
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

        Pro se Plaintiff Claude A. Staten ("Plaintiff") filed the instant Complaint pursuant to 42

U.S.C. §§ 1981 and 1983 against the Village of Monticello ("Monticello") and the Town of

Thompson in Sullivan County ("Thompson") (collectively, "Defendants"), alleging that he was

"[a] victim of [r]ace discrimination, harassment, retaliation, [and] forging[, using, and faxing]

official documents . . . ."  (Compl. ¶ II.B (Dkt. No. 1).)  Before the Court are Defendants'

Motions To Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Dkt.

Nos. 16, 21.)  For the reasons explained herein, Defendants' Motions are granted.

I.  Background

A.  Factual Background

The following facts are drawn from Plaintiff's Complaint and the documents attached

thereto, and they are taken as true for the purpose of resolving the instant Motion.  Plaintiff

asserts that he is a "Black Hispanic male," who is a police officer employed by the New York

City Police Department ("NYPD").[1]  The conduct giving rise to this Action begins with an

incident that occurred on July 26, 2006, at the Plaintiff's home in the Village of Monticello, in

the Town of Thompson in Sullivan County.  (Compl. ¶ III.C.12.)  On that date, Plaintiff asserts

that Sullivan County Deputy Sheriff Davis ("Davis") and, subsequently, New York State Police

Trooper Belgiovene ("Trooper Belgiovene") responded to a domestic incident involving

Plaintiff's "then common[-]law wife" Sherril Pressley ("Pressley"), a "Black Hispanic female,"

and another woman named Latasha Grove ("Grove").  (*Id.* ¶¶ III.C.12, 26.)[2]  Plaintiff alleges that

Davis investigated the incident and prepared a report that did not include any details finding

Plaintiff to be at fault, though he did remove "two hand guns" from Plaintiff's home.  (*Id.* ¶

III.C.16, 23.)

---

[1] Plaintiff describes the NYPD as a "co-defendant" in this case, (Compl. ¶ III.C.11), but the NYPD is not listed as a defendant in the instant Action, (*see id.* ¶¶ III.C.7–8).

[2] In his Opposition to Monticello's Motion, Plaintiff explains that the nexus of the domestic incident was that Grove, who is identified as Plaintiff's "then girlfriend," retrieved a baseball bat from her car and "menaced" Plaintiff's wife Pressley with it, and that Plaintiff simply sought to "stop the dispute."  (Pl.'s Monticello Opp'n 1–2 (Dkt. No. 25).)  Of note, as explained below, the Court may consider this factual allegation, and any other factual allegations Plaintiff makes outside of the Complaint, to the extent they are consistent with those contained in the Complaint.  *See Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013).

Following the incident, Plaintiff alleges that Davis's report, together with a second "forged report" that Davis also allegedly produced relating to the same incident, were "sent via fax . . . from the Sullivan County Sheriff's Department" to the 046 precinct of the NYPD, which is "[P]laintiff's command." (*Id.* ¶¶ III.C.11, 17–20; Pl.'s Monticello Opp'n 2 (Dkt. No. 25).)[3] Plaintiff contends that the second report faulted Plaintiff for the domestic incident, indicating that Plaintiff struck Pressley while his children were watching, and concluded that the children were in danger given that this physical altercation had occurred with guns in the home. (Compl. ¶ III.C.19, 22.)[4] Plaintiff also contends that, in August 2006, Sullivan County Child Protective Services arrived at Plaintiff's residence with a copy of the allegedly forged report, and that, in response, Pressley "presented a copy of the original . . . report," upon which both Pressley and a social worker immediately identified the differences between the reports. (*Id.* ¶ III.C.22.)

Plaintiff further alleges that, upon attempting to retrieve his handguns from the Sullivan County Sheriff's Department in September 2007, he was told by Lieutenant Boyd ("Boyd") that the Sheriff's Department "did what [Plaintiff's] department asked [it] to do." (*Id.* ¶ III.C.25.) Boyd allegedly stated that if Plaintiff was "going after anybody [he] better go after [his department in New York City], because [Sullivan County officers] [weren't] going to take a hit[] because of [Plaintiff] and [his] department," and that otherwise Plaintiff would not "be able to live [in Sullivan County]" anymore. (*Id.*) Plaintiff retrieved his guns, but when Plaintiff asked

---

[3] Plaintiff alleges that Sergeant Timothy Pollock ("Pollack") of the NYPD and Captain Donald McHugh, Executive Officer of the 46th precinct, read the report, and that Pollack called Plaintiff to read him the report. (Compl. ¶¶ III.C.20–21.)

[4] In his Opposition to Monticello's Motion, Plaintiff adds further information, explaining that the second report describes Plaintiff as not present at the scene, but nonetheless suspected of "'verbal abuse,'" and having "aggressively beat[en] and [struck] [his] wife." (Pl.'s Monticello Opp'n 1–2.)

Boyd if he was "threatening" Plaintiff, Boyd replied, "You can take it however you want. Just take your guns and get out of here." (*Id.*)

Based on these allegations, Plaintiff asserts that "the Town of Thompson along with the Sullivan County Sheriff's Department . . . conspired to violate [his] civil and constitutional rights" when "members of the Sullivan County Sheriff's Department" did "knowingly and deliberately" fax forged documents to Plaintiff's employer, the NYPD, "with the intention[] of damaging, or ending, [Plaintiff's] career due to hatred[] of both [his] color and [] race." (*Id.* ¶ III.C.33.)

Several years later, on August 29, 2013, Plaintiff alleges that his wife Pressley was subject to racial discrimination during a motor vehicle accident, wherein she "struck a parked car" in foggy conditions, in the Village of Monticello. (*Id.* ¶¶ III.C.26, 34.)[5] Plaintiff contends that Monticello Police Officer Jake Miller ("Miller"), a Caucasian, and, subsequently, Supervisor Corporal Davis ("Davis") responded to the scene of the accident. (*Id.* ¶ III.C.27.)[6] Miller allegedly prepared an accident report, and Davis allegedly directed Miller to issue Pressley a speeding ticket, despite having "not witness[ed]" her driving, there being "no skid marks . . . present," there being "no electronic recording" of her speed, and there otherwise being no "effective[] determin[ation] [of the] speed traveled." (*Id.* ¶¶ III.C.28–29, 31.) Plaintiff asserts

---

[5] In his Opposition to Monticello's Motion, Plaintiff alleges the car was parked illegally. (*See* Pl.'s Monticello Opp'n 2.)

[6] It appears that Supervisor Corporal Davis and Sullivan County Deputy Davis are one in the same. (*See* Compl. ¶ III.C.27 ("Police Officer Miller was joined by his Supervisor Corporal Davis of the Monticello Police Department, and the former Sullivan County Sheriff's Deputy who arrived at . . . [P]laintiff's[] home [on] July 29, 2006, and prepared the domestic incident report.").)

that the ticket was issued "without [p]rima [f]acie cause . . . based on [Pressley's] race." (*Id.* ¶ III.C.34.)[7]

Plaintiff alleges that Pressley also suffered from subsequent harassment. (*Id.* ¶ III.C.32.) Specifically, Plaintiff contends that at 2:00 a.m. on December 5, 2013 Davis stopped Pressley in a McDonald's parking lot while she was driving a vehicle owned by Plaintiff. (*Id.*) During the stop, according to Plaintiff, Davis "never asked for documents," asked "who the vehicle was registered to[,]" and informed Pressley "the reason for the stop was because the vehicle exhaust was too loud[,]" then telling Pressley, "Just . . . get it fixed." (*Id.*)

Over the course of this seven-year period, Plaintiff further alleges that Thomas Belgiovene ("Officer Belgiovene"), a Thompson code enforcement officer, "harassed" him and "abused his authority in order to attack . . . [P]laintiff," namely by taking "part with the Town of Thompson[,] which was his employer[,] to prevent [Plaintiff], from expanding on, and building on[, his] property." (*Id.* ¶¶ III.C.13–14.)[8] The alleged harassment consists of the following four incidents:

- First, Plaintiff alleges that in 2004, approximately one week after Plaintiff had constructed the second, and larger, of two sheds on his property, Officer Belgiovene ordered Plaintiff to tear it down "in a . . . forceful and intimidating voice," and that if Plaintiff did so, Officer Belgiovene would "leave [him] alone." (Pl.'s Thompson Opp'n 2 (Dkt. No. 26).) Officer Belgiovene ultimately

---

[7] Plaintiff further claims that when he arrived at the scene approximately 30 minutes after the accident, Davis refused to interact with Plaintiff, though Miller was "polite and respectful." (Compl. ¶ III.C.30.) Plaintiff also alleges that while the traffic summons was later dismissed, he had to obtain a separate automobile insurance policy for his wife with a higher premium. (*See* Pl.'s Monticello Opp'n 3.)

[8] Officer Belgiovene is the father of Trooper Belgiovene. (Compl. ¶ III.C.13.)

capitulated, instructing Plaintiff to apply for a variance, which Plaintiff ultimately received in February 2005.  (*Id.* at 3.)

- Second, Plaintiff alleges that in September 2007, he planned to build a garage on his property.  (*Id.*)  Upon seeking approval of his plans from Officer Belgiovene, who also served as the Assistant Building Inspector, Officer Belgiovene directed Plaintiff to have them certified by an architect.  (*Id.* at 3–4.)  When Plaintiff returned to Officer Belgiovene with the architect's approval, Officer Belgiovene instructed Plaintiff to add a fourth garage port, and then told Plaintiff that his proposed apartment above the garage was unacceptable, explaining that because Plaintiff did not "need anything like this," he was "going to disapprove it."  (*Id.* at 4.)  When Plaintiff threatened to go to the head Building Inspector, Thomas J. Brawley ("Brawley"), Officer Belgiovene told Plaintiff that he works with Brawley, who would "agree with what" Officer Belgiovene said, and that "the answer is no."  (*Id.*)  Plaintiff abandoned the project.  (*Id.*)

- Third, Plaintiff alleges that on April 9, 2012, his wife was served on his behalf with an "appearance ticket."[9]  After appearing in court in connection with that appearance ticket, Plaintiff attended a May 11, 2012 Town Hall meeting, at which he was told by Town representatives that he "would be assisted with the construction issues with [his] garage."  (*Id.* at 4–5.)  To this end, Officer Belgiovene explained to Plaintiff that "the standards have changed," and that

---

[9] When Plaintiff approached Officer Belgiovene after receiving the appearance ticket, Plaintiff alleges that Office Belgiovene told Plaintiff "not to speak to him, . . . that he is tired of . . . [Plaintiff]," and that he should "speak with the Town[] Attorney Paula Kay."  (Pl.'s Thompson Opp'n 4.)  Plaintiff does not explain what the appearance ticket pertained to, though he does allege that he made nine related appearances in the Town of Thompson Court between September 10, 2012 and February 20, 2014.  (*Id.* at 6.)

Plaintiff's addition of a bathroom in connection with the apartment above his new garage would require a septic tank capacity increase. (*Id.* at 5.) Plaintiff accordingly agreed to "delete the additional bathroom" from his plans. (*Id.*) At that point, Town Attorney Paula Kay ("Kay") asked if Plaintiff had a variance for his smaller shed, which had been built in 1993. (*Id.*) Because Plaintiff did not have a variance, the Town required him to remove it, and Plaintiff complied. (*Id.* at 5–6.)

- Fourth, subsequent to these events, Plaintiff alleges that Officer Belgiovene "took part" in having Plaintiff's "property taxes excessively raised in a form of . . . attack on [him]." (Compl. ¶ III.C.15.)[10]

Additionally, Plaintiff also alleges, for the first time in his Opposition to Monticello's Motion, that his daughter, Cristal, a student at Monticello High School, was "attacked" and has "not been allowed to actively participate in team sports" at school because Plaintiff filed this action. (Pl.'s Monticello Opp'n 4.) While Plaintiff provides little detail as to when these attacks occurred or who he believes was responsible, he does allege that school officials told his daughter that Monticello and Thompson are "poor" and suffering because "of the action [Plaintiff] is taking against them." (*Id.*)

B. Procedural History

Plaintiff filed his Complaint on June 25, 2014, alleging that he was "a victim of race discrimination, harassment, retaliation, [and] forging[, using, and faxing] official documents," and seeking "compensatory and punitive damages in the amount of 5,000,000 dollars." (Compl. ¶¶ II.B, V.) Pursuant to a scheduling order adopted at a Pre-motion Conference held before the

---

[10] Plaintiff does not allege the date on which these events occurred.

Court on October 8, 2014, (Dkt. No. 14), Defendant Thompson filed its Motion To Dismiss and

supporting papers on November 6, 2014, (Dkt. Nos. 16–18), and Defendant Monticello filed its

Motion To Dismiss and supporting papers on November 7, 2014, (Dkt. Nos. 21–23).  Plaintiff

filed opposition papers on December 8, 2014.  (Dkt. Nos. 25–26.)  Defendant Monticello filed a

reply on December 19, 2014, (Dkt. No. 27), and Defendant Thompson filed a reply on December

22, 2014, (Dkt. No. 29).

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual

allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the 'grounds' of

his [or her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 555 (2007) (second alteration in original) (citations omitted).  Instead, the Supreme Court

has emphasized that "[f]actual allegations must be enough to raise a right to relief above the

speculative level," *id.*, and that "once a claim has been stated adequately, it may be supported by

showing any set of facts consistent with the allegations in the complaint," *id.* at 563.  A plaintiff

must allege "only enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.

But if a plaintiff has "not nudged [his or her] claims across the line from conceivable to

plausible, the[] complaint must be dismissed."  *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679

(2009) ("Determining whether a complaint states a plausible claim for relief will . . . be a

context-specific task that requires the reviewing court to draw on its judicial experience and

common sense.  But where the well-pleaded facts do not permit the court to infer more than the

mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the

pleader is entitled to relief.'" (alteration in original) (citation omitted) (quoting Fed. R. Civ. P.

8(a)(2))).

For the purposes of Defendants' Motions To Dismiss, the Court is required to consider as true the factual allegations contained in the Complaint. *See Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) ("We review *de novo* a district court's dismissal of a complaint pursuant to Rule 12(b)(6), accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor." (internal quotation marks omitted)); *Gonzalez v. Caballero*, 572 F. Supp. 2d 463, 466 (S.D.N.Y. 2008) (same). "In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted).

Because Plaintiff is proceeding pro se, the court construes his "submissions. . . liberally" and interprets them "to raise the strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (alteration in original) (internal quotation marks omitted). Furthermore, for the same reason, it is appropriate to consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah*, 2013 WL 3972514, at *4 n.3 (internal quotation marks omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010); *see also Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) (noting that a court may consider "factual allegations made by a pro se party in his papers opposing the motion"); *Rodriguez v. Rodriguez*, No. 10-CV-891, 2013 WL 4779639, at *1 (S.D.N.Y. July 8, 2013) ("Although the Court is typically confined to the allegations contained within the four corners of the complaint, when analyzing the sufficiency of a pro se pleading, a court may consider factual allegations contained in a pro se

9

litigant's opposition papers and other court filings." (citations and internal quotation marks omitted)).

### B. Analysis

Defendants move to dismiss Plaintiff's Complaint on several grounds. Defendants both argue that Plaintiff's claims stemming from the alleged July 26, 2006 domestic incident are barred by the statute of limitations and that Plaintiff fails to allege the existence of any policy or practice that caused the alleged harm under *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978). Monticello also argues that Plaintiff lacks standing to bring his claims for harassment, retaliation, and racial discrimination on behalf of non-party Pressley, while Thompson also argues that Plaintiff's claim relating to excessive taxes is barred by the Tax Injunction Act.

#### 1. Statute of Limitations

As a threshold matter, the Court addresses Defendants' contention that Plaintiff's claims stemming from the alleged July 26, 2006 domestic incident are time-barred. Although "[t]he lapse of a limitations period is an affirmative defense that a defendant must plead and prove[,]" a statute of limitations defense may be "raise[d] . . . in a pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406, 425 (2d Cir. 2008); *see also Zhongwei Zhou v. Wu,* No. 14-CV-1775, 2015 WL 925962, at *3 (S.D.N.Y. Mar. 3, 2015) (same); *Mosdos Chofetz Chaim, Inc. v. RBS Citizens, N.A.*, 14 F. Supp. 3d 191, 210 (S.D.N.Y. 2014) ("[B]ecause the defendants bear the burden of establishing the expiration of the statute of limitations as an affirmative defense, a pre-answer motion to dismiss on this ground may be granted only if it is clear on the face of the complaint that the statute of limitations has run." (alteration in original) (internal quotation marks omitted)); *cf. Wang v. Palmisano,* 51 F. Supp. 3d 521, 536–38 (S.D.N.Y. 2014) (refusing to dismiss several

employment claims under state and federal law as untimely pursuant to Rule 12(b)(6) because of two uncertainties on the face of the complaint as to when the claims accrued).

Because § 1983 "does not provide a specific statute of limitations," "courts apply the statute of limitations for personal injury actions under state law." *Hogan v. Fischer,* 738 F.3d 509, 517 (2d Cir. 2013); *see also Ormiston v. Nelson,* 117 F.3d 69, 71 (2d Cir. 1997) (finding that in considering Section 1983 claims, courts should apply "the general or residual [state] statute [of limitations] for personal injury actions"). Therefore, "[§] 1983 actions filed in New York are . . . subject to a three-year statute of limitations." *Hogan*, 738 F.3d at 517; *see also Ormiston*, 117 F.3d at 71 (explaining that "New York's three-year statute of limitations for unspecified personal injury actions, New York Civil Practice Law and Rules § 214(5), governs [§] 1983 actions in New York"). Section 1981 claims are likewise governed either by the same three-year statute of limitations that applies to § 1983 claims, *Mian v. Donaldson, Lufkin, & Jenrette Secs. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993); *Harmon v. Patrolman's Benevolent Ass'n of City of New York*, No. 05-CV-589, 2005 WL 2847256, at *2 (E.D.N.Y. Oct. 31, 2005) ("Claims brought under §§ 1981 and 1983 in New York are generally governed by New York's residual three year statute of limitations for personal injury claims."), or the four-year statute of limitations that applies to those § 1981 claims "made possible by the 1991 amendments to § 1981" (which extended the statute for employment discrimination claims and therefore does not appear to apply here), *id*.

Plaintiff's Complaint was filed on June 25, 2014, nearly eight years after the July 26, 2006 incident. (*See* Compl.) Accordingly, absent evidence of a "'continuing violation' or tolling of the statute of limitations," *Valdez v. City of New York*, No. 11-CV-5194, 2013 WL 8642169, at *6 (S.D.N.Y. Sept. 3, 2013), Plaintiff is barred from bringing any § 1981 or § 1983 claims arising from those incidents. Plaintiff does not allege any connection between the actions

11

of Davis and Boyd in 2006 and the subsequent alleged incident, such that, especially given the long period of time that elapsed between each incident, the claims can be deemed part of the same continuing violation.  *See Rebrovich v. County of Erie,* 544 F. Supp. 2d 159, 169 (W.D.N.Y. 2008) (noting that continuing violation doctrine is appropriate only in "compelling circumstances," where "the unlawful conduct takes place over a period of time, making it difficult to pinpoint the exact day the violation occurred; where there is an express, openly espoused policy [that is] alleged to be discriminatory; or where there is a pattern of covert conduct such that the plaintiff only belatedly recognizes its unlawfulness"); *Oshinsky v. N.Y.C. Hous. Auth.,* No. 98-CV-5467, 2001 WL 218395, at *9 (S.D.N.Y. Feb. 23, 2000) (holding that the passage of months between acts of harassment is fatal to plaintiff's continuing violation argument); *cf. Ayers v. State of Conn. Judicial Branch*, No. 99-CV-935, 2002 WL 32094365, at *4 (D. Conn. Mar. 28, 2002) ("Here, the plaintiff asserted a continuing violation in her administrative proceeding and her factual account shows repeated and related instances of harassment which depict a continuous pattern of allegedly unlawful conduct."); *Gonzalez v. Bratton,* Nos. 96-CV-6330, 97-CV-2264, 2000 WL 1191558 at *17 (S.D.N.Y. Aug. 22, 2000) (citing with approval case law which provides that "the continuing violation doctrine [is] applicable if the plaintiff can tell only by hindsight that earlier acts represented the early stages of harassment").  Also, Plaintiff does not allege any basis for tolling the statute of limitations.[11]

---

[11] Let's note, for example, that Plaintiff offers no allegations that might make out an equitable estoppel claim. The doctrine of equitable estoppel is properly invoked where the enforcement of the rights of one party would work an injustice upon the other party due to the latter's justifiable reliance upon the former's words or conduct.  *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 725 (2d Cir. 2001).

Defendants' Motions are therefore granted to the extent that Plaintiff's claims rely on those incidents.[12]

### 2.  Standing

"To establish Article III standing, an injury must be 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1140 (2013) (quoting *Monsanto Co. v. Geertson Seed Farms,* 561 U.S. 139, 149 (2010)).  The Second Circuit has held that "[a] plaintiff may assert the constitutional claims of a third party if the plaintiff can demonstrate: (1) injury to the plaintiff, (2) a close relationship between the plaintiff and the third party that would cause plaintiff to be an effective advocate for the third party's rights, and (3) some hindrance to the third party's ability to protect his or her own interests."  *Camacho v. Brandon,* 317 F.3d 153, 159 (2d Cir. 2003) (internal quotation marks omitted). "Implicit in *Camacho's* formulation is the requirement that the third party . . . [have] *a constitutional claim.*"  *Huth v. Haslun,* 598 F.3d 70, 75 (2d Cir. 2010) (emphasis in original).  "It is the burden of the party invoking federal jurisdiction to establish standing."  *Congregation Rabbinical Coll. of Tartikov, Inc. v. Village of Pomona*, 915 F. Supp. 2d 574, 589 (S.D.N.Y. 2013); *see also Thompson v. County of Franklin*, 15 F.3d 245, 249 (2d Cir. 1994) ("[I]t is the burden of the party who seeks an exercise of jurisdiction in his favor . . . clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute." (citation and internal quotation marks omitted)).

Here, even assuming that the first two elements of third-party standing are met, Plaintiff

---

[12] Plaintiff appears to admit that these claims are untimely in his Opposition to Thompson's Motion.  (*See* Pl.'s Thompson Opp'n 1 ("[C]ertain incidents mentioned within my [C]omplaint are time barred")).  Additionally, while Defendants do not raise a statute of limitations defense against Plaintiff's other claims, two of them, namely those pertaining to Plaintiff's discussions with Officer Belgiovene about the shed and garage in 2004 and 2007, are barred for the same reason.

cannot raise Pressley's claims because there is no apparent "hindrance to [Pressley's] ability to protect . . . her own interests." *Camacho*, 317 F.3d at 159.  The only allegations that Plaintiff makes on this point appear for the first time in his Opposition to Monticello's Motion, wherein Plaintiff explains that his wife was "afraid to be named as a [P]laintiff" because of "intimidation imposed by the [D]efendants."  (Pl.'s Monticello Opp'n 2.)  The problem, however, is that this contention is merely conclusory and lacks supporting allegations detailing why, exactly, Pressley was afraid, or what sort of intimidation Defendants had employed.  *See Espada v. N.Y. Bd. of Elections,* No. 07-CV-7622, 2007 WL 2588477, at *3 n. 39 (S.D.N.Y. Sept.4, 2007) (noting, in the context of third-party standing and a pro se plaintiff, that "[t]he burden of establishing standing rests with the party invoking federal jurisdiction"); *see also Mental Hygiene Legal Serv. v. Cuomo*, 13 F. Supp. 3d 289, 302 (S.D.N.Y. 2014), *aff'd,* 609 F. App'x 693 (2d Cir. 2015) (finding the plaintiff failed to show hindrance to its clients "protecting their own interests" in "[o]ffering as proof a single example") (internal quotation marks omitted).  Rather, the only other allegations pertaining to Pressley are that she received a speeding ticket, and that she was asked to repair her muffler, which are wholly insufficient to suggest fear or intimidation.  *See Mazzocchi v. Windsor Owners Corp.*, No. 11-CV-7913, 2012 WL 3288240, at *5 (S.D.N.Y. Aug. 6, 2012) (dismissing third-party claims because the plaintiff had "not alleged sufficient facts to demonstrate" that a third party "[r]efused to take part in the litigation" because of "fear of . . . stigma, or . . . incapacity").  Indeed, Plaintiff appears to recognize Pressley's ability to press her claims when he admits that "the [C]omplaint can be amended to reflect [Pressley] as a named plaintiff."  (Pl.'s Monticello Opp'n 2.)  Plaintiff thus lacks standing to raise Pressley's claims, and Monticello's Motion is granted as to these claims.[13]

---

[13] All of Pressley's claims pertain to Monticello; none implicate Thompson.

### 3.  Tax Injunction Act

The Tax Injunction Act ("TIA") provides that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy[,] or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."  28 U.S.C. § 1341; *see also Long Island Lighting Co. v. Town of Brookhaven,* 889 F.2d 428, 431 (2d Cir. 1989) (explaining that the TIA prevents federal courts from providing injunctive relief or declaratory relief "as long as there is a plain, speedy and efficient remedy in state court").  Similarly, "so long as the remedy afforded by state law is adequate, the Tax Injunction Act and principles of comity . . . bar federal courts from granting damages in state tax cases."  *Terio v. Carlin*, No. 10-CV-3201, 2010 WL 4117434, at *3 (S.D.N.Y. Sept. 27, 2010); *see also Greenberg v. Town of Scarsdale*, 477 Fed. App'x 849, 850 (2d Cir. 2012) ("Similarly, the principle of comity prevents a taxpayer from seeking damages in a § 1983 action if a plain, adequate, and complete remedy may be had in state court.").

"[B]efore the TIA may be invoked, two conditions must exist: (1) "the surcharges must constitute taxes," and (2) "the state remedies available to [the] plaintiff[ ] must be plain, speedy and efficient," *Hattem v. Schwarzenegger*, 449 F.3d 423, 427 (2d Cir. 2006) (internal quotation marks omitted), or, in other words, "procedurally adequate," *Long Island Lighting*, 889 F.2d at 431; *see also Macagna v. Town of East Hampton*, No. 09-CV-3064, 2010 WL 3257729, at *5 (E.D.N.Y. Aug. 16, 2010) (same).  Furthermore, the Second Circuit has explained that "the TIA should be interpreted to preclude jurisdiction only where state taxpayers seek federal-court orders enabling them to *avoid paying state taxes.*"  *Luessenhop v. Clinton County*, 466 F.3d 259, 267 (2d Cir. 2006) (internal quotation marks omitted); *see also Hibbs v. Winn*, 542 U.S. 88, 104–05 (2004) (explaining that "in enacting the TIA, Congress trained its attention on taxpayers who sought to avoid paying their tax bill by pursuing a challenge route other than the one

specified by the taxing authority").  Accordingly, "an exception to the TIA exists when the taxpayer is bringing a 'third-party' suit, not seeking to stop the collection, or contest the validity of a tax imposed on plaintiff."  *Robinson v. Mattox*, No. 13-CV-1289, 2015 WL 136171 at *3 (N.D.N.Y. Jan. 9, 2015).

Here, Plaintiff alleges that Officer Belgiovene "took part" in having Plaintiff's "property taxes excessively raised in a form of . . . attack."  (Compl. ¶ III.C.15.)  However, "[b]y asking the district court to decide this question, . . . [Plaintiff] is in effect seeking a federal-court ruling on a local tax matter, precisely the type of suit the Tax Injunction Act was designed to limit." *Bernard v. Village of Spring Valley*, 30 F.3d 294, 297 (2d Cir. 1994).  Moreover, the Second Circuit has recognized, "New York provides several remedies" by which somebody in Plaintiff's position can "raise all constitutional objections to the real property taxes imposed," including a declaratory judgment action under New York Civil Practice Law and Rules § 3001 or New York General Municipal Law § 51, a § 1983 action in state court, or an administrative review action challenging the "validity of [the relevant] assessments."  *Long Island Lighting*, 889 F.2d at 431–32; *see also Terminello v. Village of Piermont*, No. 08-CV-1056, 2009 WL 3496615, at *1–2 (S.D.N.Y. Oct. 28, 2009) (dismissing claim based on local law reassessing property taxes because "New York State courts [had] the power and authority to adequately resolve [the] [p]laintiffs' claims"); *Four K. Group, Inc. v. NYCTL 2008-A Trust*, 2013 WL 1562227, at *6 (E.D.N.Y. Apr. 15, 2013) (same).[14]  The Court therefore lacks subject matter jurisdiction over Plaintiff's tax-based claim, and Thompson's Motion is granted with respect to this claim.[15]

---

[14] Thompson also suggests that the municipal grievance process or Small Claims Assessment Review would be adequate.  (Def. Town of Thompson's Mem. of Law in Supp. of Dismissal 4 (Dkt. No. 18).)

[15] In his Opposition to Thompson's Motion, Plaintiff alleges that the "*reason* . . . [his] property taxes were excessively raised," namely a racially discriminatory motive, rather than the

4.  *Monell*

Even if Plaintiff's claims arising out of the July 26, 2006 incident were timely, even if he

had standing to assert claims on behalf of Pressley, and even if his tax claim was barred by the

TIA, because the only named Defendants are municipalities, Plaintiff must state a claim under

*Monell* in order for his lawsuit to survive Defendants' Motions.  As discussed below, Plaintiff

has failed to do so.

"Congress did not intend municipalities to be held liable [under § 1983] unless action

pursuant to official municipal policy of some nature caused a constitutional tort."  *Monell*, 436

U.S. at 691.[16]  Thus, "to prevail on a claim against a municipality under [§] 1983 based on acts

of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2)

deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an

official policy of the municipality caused the constitutional injury."  *Roe v. City of Waterbury*,

542 F.3d 31, 36 (2d Cir. 2008); *cf. Salvatierra v. Connolly*, No. 09-CV-3722, 2010 WL 5480756,

at *10 (S.D.N.Y. Sept. 1, 2010) (dismissing claim against municipal agencies where the plaintiff

did not allege that any policy or custom caused the deprivation of his rights), *adopted by* 2011

---

fact that they were raised, is the crux of his claim.  (Pl.'s Thompson Opp'n 1 (emphasis added).)
This distinction was found to be have no bearing on the applicability of the TIA in at least one
case, *see Cody, Inc. v. Town of Woodbury*, 8 F. Supp. 2d 340, 341, 343 (S.D.N.Y. 1998)
(dismissing complaint alleging discriminatory administration of property taxes on TIA grounds),
but even if the distinction mattered, Plaintiff nonetheless fails to state a *Monell* claim against the
Defendants, as discussed below, and also offers no specific factual allegations (such as how he
believes there was discrimination or how much his taxes were increased), making this claim
conclusory.

[16] The same analysis applies to § 1981 claims.  *See, e.g., Philippeaux v. N. Cent. Bronx
Hosp.*, 871 F. Supp. 640, 655 (S.D.N.Y. 1994) ("[M]unicipal liability for public officials'
violations of [§] 1981 must be found under [§] 1983 using the *Monell* analysis." (citing *Jett v.
Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989))); *see also Chin v. N.Y.C. Hous. Auth.*, 575 F.
Supp. 2d 554, 561 (S.D.N.Y. Sept. 9, 2008) ("A municipality can be liable for violating [§] 1981
only if the injury at issue resulted from the execution of a . . . policy or custom." (footnote and
internal quotation marks omitted)).

WL 9398 (S.D.N.Y. Jan. 3, 2011); *Arnold v. Westchester County.*, No. 09-CV-3727, 2010 WL 3397375, at *9 (S.D.N.Y. Apr. 16, 2010) (dismissing claim against county because the complaint did "not allege the existence of an unconstitutional custom or policy"), *adopted sub nom. Arnold v. Westchester Cty. Dep't of Corr.*, 2010 WL 3397372 (S.D.N.Y. Aug. 15, 2010).  The fifth element reflects the notion that "a municipality may not be held liable under § 1983 solely because it employs a tortfeasor." *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997); *see also Newton v. City of New York*, 566 F. Supp. 2d 256, 270 (S.D.N.Y. 2008) ("As subsequently reaffirmed and explained by the Supreme Court, municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right.").  In other words, a municipality may not be liable under § 1983 "by application of the doctrine of respondeat superior." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (italics omitted); *see also Vassallo v. Lando*, 591 F. Supp. 2d 172, 201 (E.D.N.Y. 2008) (noting that "a municipal entity may only be held liable where the entity *itself* commits a wrong").  Instead, there must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988) ("[G]overnmental bodies can act only through natural persons, . . . [and] governments should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights.").

A plaintiff may satisfy the "policy or custom" requirement by alleging "(1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an

extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees." *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted).  Under the third method, "an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Bd. of the Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 404 (1997); *see also Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir. 1996) (noting that a municipality's custom "need not be memorialized in a specific rule or regulation").  Therefore, a plaintiff may establish municipal liability by "demonstrate[ing] that a policy maker indirectly caused the misconduct of a subordinate municipal employee by acquiescing in a longstanding practice or custom which may fairly be said to represent official policy." *Miller v. County of Nassau*, 467 F. Supp. 2d 308, 314 (E.D.N.Y. 2006).  To prevail on this theory of municipal liability, however, a plaintiff must prove that the custom at issue is permanent and well-settled. *See Praprotnik*, 485 U.S. at 127 (noting that "the [Supreme] Court has long recognized that a plaintiff may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a custom or usage with the force of law'" (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–68 (1970) (some internal quotation marks omitted))).

Accordingly, and of particular importance in this case, "a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the [municipality]." *Newton*, 566 F. Supp. 2d at 271; *see also City of Oklahoma v. Tuttle*, 471 U.S. 808, 823–24 (1985) (plurality opinion) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a

municipal policymaker."); *Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002) ("A single incident by itself is generally insufficient to establish the affirmative link between the municipal policy or custom and the alleged unconstitutional violation." (citation omitted)).  In the end, "a plaintiff must demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the alleged injury."  *Roe*, 542 F.3d at 37 (quoting *Brown*, 520 U.S. at 404); *see also Tuttle*, 471 U.S. at 824 n.8 ("The fact that a municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy *Monell*'s requirement that the particular policy be the 'moving force' behind a *constitutional* violation.  There must at least be an affirmative link between[, for example,] the training inadequacies alleged and the particular constitutional violation at issue."); *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) ("Absent a showing of a causal link between an official policy or custom and the plaintiffs' injury, *Monell* prohibits a finding of liability against the City."); *Johnson v. City of New York*, No. 06-CV-9426, 2011 WL 666161, at *3 (S.D.N.Y. Feb. 15, 2011) (noting that after demonstrating the existence of a municipal policy or custom, "a plaintiff must establish a causal connection—an affirmative link—between the policy and the deprivation of his constitutional rights" (internal quotation marks omitted)).

At this stage, of course, Plaintiff need not prove these elements, but he must still plead them sufficiently to make out a plausible claim for relief.  Although there is no heightened pleading requirement for complaints alleging municipal liability under § 1983, *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 168 (1993), a complaint does not "suffice if it tenders naked assertion[s] devoid of further factual enhancement," *Iqbal,* 556 U.S. at 678 (alteration in original) (internal quotation marks omitted).  Thus, to survive the Motions To Dismiss, Plaintiff cannot merely allege the existence of a municipal policy or custom but "must allege facts tending to support, at least circumstantially, an inference that such a

municipal policy or custom exists." *Santos v. New York City*, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012).

Applying these guiding principles, Plaintiff's allegations do not support a *Monell* claim. With regard to Thompson, the only employee referenced in the Complaint is Officer Belgiovene, whom Plaintiff alleges, on one occasion, "took part with the Town of Thompson . . . to prevent . . . . [P]laintiff[] from expanding on, and building on[,] [his] property."  (Compl. ¶ III.C.14.) Perhaps recognizing, as outlined above, that a single allegation of this sort is insufficient, *see, e.g., Valdez*, 2013 WL 8642169, at *18 (noting that the plaintiff's allegations did "not indicate the existence of a formal policy or practice so persistent and widespread that it constitute[d] a custom or usage" because it was based on "a single conversation with a single correction officer"), Plaintiff added allegations against Officer Belgiovene and other Thompson officials in his Opposition to Thompson's Motion.  Still, none of these allegations is sufficient to allege a *Monell* claim.

Because "only those municipal officials who have final policymaking authority may by their actions subject the government to [§] 1983 liability," *Praprotnik*, 485 U.S. at 127 (plurality opinion); *see also Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir. 2000) (same); *Brenes v. City of New York*, 733 F. Supp. 2d 357, 363 (E.D.N.Y. 2010) (same), Officer Belgiovene's mere role as a code enforcement official, or as assistant building inspector, cannot subject Thompson to liability, *see Powe v. Town of Putnam Valley*, No. 08-CV-8463, 2010 WL 3958796, at *11 (S.D.N.Y. Sept. 9, 2010) (dismissing plaintiff's complaint where there was "no evidence in the record to indicate that [the town's Code Enforcement Officer] possesses final authority to establish town policy"); *Cruz v. Liberatore,* 582 F.Supp.2d 508, 521 (S.D.N.Y.2008) (granting summary judgment where plaintiff failed to provide "any documentary evidence or testimony suggesting that" the named official was the defendant municipality's final policymaker).  Indeed,

the allegations in the Complaint suggest that Officer Belgiovene did nothing more that carry out previously established policies.  The same applies to Brawley's role as Building Inspector and Kay's as Town Attorney:  Plaintiff makes no allegations suggesting that they had any final decision-making authority, let alone what they did to violate Plaintiff's rights.  Accordingly, in order to state a *Monell* claim, Plaintiff must allege that the Thompson officials in question acted pursuant to municipal policy, custom, or practice.  *See Hargett v. N.Y.C. Transit Auth.*, 640 F. Supp. 2d 450, 473 (S.D.N.Y. 2009), *aff'd sub nom.*, 381 F. App'x 12 (2d Cir. 2010) ("In this Circuit, the plaintiff—even a *pro se* plaintiff—bears the burden of establishing as a matter of law that the conduct of a given official represents official policy.").

Plaintiff fails to do so.  While Plaintiff alleges three instances in which Officer Belgiovene objected to development on Plaintiff's property, the last of which—the Town Hall meeting—involved Brawley and Kay, and makes a general claim that Officer Belgiovene "took part" in raising his taxes, he alleges that the rationale—the potential policy, custom, or practice—behind their behavior is racism; Plaintiff contends he was targeted "because of [his] color and race."  (Pl.'s Thompson Opp'n 6.)  The problem, however, is that other than a passing and conclusory allegation that Plaintiff's property taxes were higher than those of his Caucasian neighbors, (*id.* at 3), Plaintiff offers no specific allegations supporting his contention that the alleged harassment stems from any municipal policy, custom, or practice of targeting racial minorities, *see Moore v. City of New York,* No. 08-CV-8879, 2010 WL 742981, at *6 (S.D.N.Y. Mar. 2, 2010) ("Allegations that a defendant acted pursuant to a policy or custom without any facts suggesting the policy's existence[] are plainly insufficient." (internal quotation marks omitted); *Woodward v. Morgenthau*, 740 F. Supp. 2d 433, 440 (S.D.N.Y. 2010) (dismissing *Monell* claim because the plaintiff had "failed to allege sufficient facts to support an inference that such a municipal policy or custom resulted in a deprivation of his rights").  He does not

allege any "circumstances giving rise to a plausible inference of racially discriminatory intent," *Yusuf v. Vassar Coll.,* 35 F.3d 709, 713 (2d Cir. 1994); *see also Brown v. The City of New York*, No. 09-CV-2337, 2010 WL 4077925, at *2 (S.D.N.Y. Oct. 13, 2010) (dismissing *Monell* claim because the plaintiff "makes factual allegations regarding a single incident he had with the police" rather than regarding a "specific policy that led officers to take the actions they did[,] . . . any deficiencies in the officers' training, [or] . . . any facts from which the court could infer that such a policy or such deficiencies existed"), nor does he proffer any evidence that other racial minorities were targeted such that the Court could conclude that Thompson plausibly, by custom, policy, or practice, targeted minorities, *see Simms v. City of New York,* No. 10-CV-3420, 2011 WL 4543051, at *3 (E.D.N.Y. Sept. 28, 2011) (dismissing conclusory allegations that did not provide any facts that would allow the court to infer what city policies or practices were at issue) (citing *Iqbal,* 556 U.S. at 678–79), *aff'd,* 480 F. App'x. 627 (2d Cir. 2012); *see also Triano v. Town of Harrison*, 895 F. Supp. 2d 526, 535–37 (S.D.N.Y. 2012) (holding that "mere allegations of a municipal custom or practice of tolerating official misconduct are insufficient to demonstrate the existence of such a custom unless supported by factual details").  Instead, Plaintiff alleges that he, alone, was the target of Thompson officials, which is insufficient to establish a policy, custom, or practice.  *Compare McLaurin v. New Rochelle Police Officers,* 373 F. Supp. 2d 385, 401 (S.D.N.Y. 2005) ("[O]ne man's experience does not make a policy."), *vacated sub nom. in part on other grounds, McLaurin v. Falcone*, 2007 WL 247728 (2d Cir. Jan. 25, 2007), *and Birmingham v. Ogden,* 70 F. Supp. 2d 353, 373 (S.D.N.Y. 1999) (dismissing municipal liability claims when "the only fair inference here is that what happened to plaintiff . . . was unique to him—a deeply personal vendetta carried out by persons who were out to get him"), *with Sorlucco v. N.Y.C. Police Dep't*, 971 F.2d 864, 871–73 (2d Cir. 1992) (upholding municipal liability claim based on theory that "NYPD engaged in a pattern of disciplining

*probationary officers,* who had been arrested while on probation, in a discriminatory and

disparate manner based upon their gender") (emphasis added); *cf. Prince v. County of Nassau*,

837 F. Supp. 2d 71, 104 (E.D.N.Y. 2011) (holding that because the plaintiff's "theory of the case

is that [the] defendants' alleged harassment was personal and directed purposefully and solely

towards plaintiff, . . . . the alleged harassment . . . [was] [in]sufficient to establish *Monell*

liability"), *aff'd*, 563 F. App'x 13 (2d Cir. 2014).[17]  Accordingly, Plaintiff has failed to establish

a *Monell* claim with regard to Thompson.[18]

       With regard to Defendant Monticello, Plaintiff admits that Corporal Davis, the officer

who drafted the initial incident report, was at the time an employee of the Sullivan County

Sheriff's Department, and not the Village of Monticello, even though it appears that he later

joined the Monticello Police Department as a Supervisor Corporal.  (*See* Compl. ¶ III.C.27.)

Moreover, even if the Court considered Davis to have always been associated with Monticello,

as opposed to the County, as with Officer Belgiovene, Brawley, and Kay, Plaintiff does not

allege that Davis had policymaking authority, and has failed to allege a policy, custom, or

---

      [17] In fact, given that Plaintiff only alleges four instances of alleged harassment over the decade at issue, all of which only concerned Plaintiff's use of his land, and some of which ended favorably for Plaintiff (e.g., obtaining a variance for his larger shed), it is not clear there is even a pattern of harassment at all.  Nor does Plaintiff make out a selective treatment claim, given that he does not allege a single comparator.  *See LaTrieste Rest. v. Village of Port Chester*, 188 F.3d 65, 69 (2d Cir. 1999) (noting that a selective treatment claim requires a plaintiff to allege, among other things, that "the person, compared with others similarly situated, was selectively treated").

      [18] Moreover, Plaintiff fails to state a claim, whether fashioned as a substantive or procedural due process claim, based on land use decisions of Defendants.  Simply put, Plaintiff fails to include any allegations about his entitlement to any particular use of his property that was wrongfully denied.  *See Walz v. Town of Smithtown*, 46 F.3d 162, 168 (2d Cir. 1995) (holding that a plaintiff, in order to establish a constitutionally cognizable property interest, must demonstrate that he or she has a clear entitlement to the approval sought from the government official or administrative body"); *C.C.S.com USA, Inc. v. Gerhauser*, No. 08-CV-4235, 2012 WL 1118625, at *5 (E.D.N.Y. Mar. 30, 2012), *aff'd*, 518 F. App'x 1 (2d Cir. 2013) (same).

practice that guided Davis's actions.  Plaintiff alleges that Davis, on one occasion, filed a fraudulent police report, on one occasion directed Miller to issue Pressley a speeding ticket, and on one occasion stopped Pressley and instructed her to fix her exhaust pipe.  (*Id.* ¶¶ III.C.29–30, 32.)  Absent further allegations regarding other instances of this conduct against other individuals, deficiencies in Davis's training, or otherwise how these actions constituted adherence to official policy, custom, or practice, Plaintiff's allegations are insufficient for the same reasons he failed to state a *Monell* claim against Thompson.  Indeed, while Plaintiff alleges that the motivation for Davis's actions was also racial animus, (*see, e.g., id.* ¶ III.C.34), Plaintiff once again failed to offer supporting allegations to suggest that his actions were part of a pattern of conduct directed at racial minorities.[19]

Plaintiff's allegations regarding alleged actions against his daughter Cristal at Monticello High School likewise do not state a *Monell* claim.  While the actions by school officials—as alleged—would be improper, Plaintiff does not identify which school officials were responsible such that the Court can determine if they were policymakers, and the allegations once again refer only to conduct against Plaintiff's daughter without reference to any overarching custom, policy, or practice.  *See Moore*, 2010 WL 742981, at *6.  Moreover, even if Plaintiff had alleged a policy or practice, he has failed to allege a plausible connection between his lawsuit and the alleged retaliation, namely the attacks and sports participation ban, such that the substance of Plaintiff's retaliation claim is no more than conclusory.

---

[19] In fact, it is not clear that Davis committed any misconduct in his interactions with Pressley at all; the issuance of a ticket and request that a vehicle operator fix an exhaust pipe might have been justified, and Plaintiff offers no specific facts, as opposed to conclusory claims, to plausibly establish otherwise.

Accordingly, even if there were no other infirmities with the Complaint, Plaintiff has failed to state a *Monell* claim.  Defendants' Motions are alternatively granted on this ground.[20]

### 5.  New York Law Claims

To the extent that Plaintiff intended to state a claim under New York Executive Law § 296, (*see* Compl. ¶ III.C.4 (invoking this statute)), that claim is dismissed without prejudice because the Court has dismissed Plaintiff's federal claims.  The Court therefore declines to exercise pendent jurisdiction over Plaintiff's state law claims.  *See United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial . . . the state claims should be dismissed as well."); *McGugan v. Aldana–Bernier,* No. 11-CV-342, 2012 WL 1514777, at *8 (E.D.N.Y. Apr. 30, 2012) ("[W]hen all federal claims are eliminated in the early stages of litigation, the balance of factors generally favors declining to exercise pendent jurisdiction over remaining state law claims and dismissing them without prejudice."), *aff'd,* 752 F.3d 224 (2d Cir. 2014).[21]

### III.  Conclusion

In light of the foregoing analysis, the Court grants Defendants' Motions To Dismiss. Plaintiff may file an Amended Complaint, addressing the deficiencies outlined in this

---

[20] Additionally, while the Court need not reach the issue, Monticello is correct that Plaintiff cannot obtain punitive damages because "punitive [§] 1983 damages against a municipality are barred by law."  *Nimkoff v. Dollhausen*, 751 F. Supp. 2d 455, 468 (E.D.N.Y. 2010) (citing *Newport v. Fact Concerts*, 453 U.S. 247, 271 (1981)).

[21] Moreover, to the extent that this claim is based on the events of July 29, 2006, or the first two alleged encounters with Officer Belgiovene, they are time-barred.  *See Beattie v. Farnsworth Middle Sch.,* 143 F. Supp. 2d 220, 226 n.5 (N.D.N.Y. 1998) ("A three-year statute of limitations attaches to Plaintiff's [sexual harassment] New York Human Rights Law § 296(1) claims").

Opinion, within 30 days.[22] He otherwise risks dismissal of his case. The Clerk of the Court is

directed to terminate the pending Motions. (Dkt. Nos. 16, 21).

SO ORDERED.

DATED:     October 26, 2015
           White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

[22] Plaintiff may wish to consider whether he has plausible claims against any municipal defendants who could be sued in their official capacities.

27