UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CLAUDE A. STATEN and SHERRILL L.
PRESSLEY,

                Plaintiffs,

    v.

THE VILLAGE OF MONTICELLO and
THE TOWN OF THOMPSON SULLIVAN
COUNTY,

                Defendants.

No. 14-CV-4766 (KMK)

OPINION & ORDER

Appearances:

Claude A. Staten
Middletown, NY
*Pro Se Plaintiff*

Sherrill L. Pressley
Monticello, NY
*Pro Se Plaintiff*

Adam L. Rodd, Esq.
Alana R. Bartley, Esq.
Ralph L. Puglielle, Jr., Esq.
Drake, Loeb, Heller, Kennedy, Gogerty, Gaba & Rodd, PLLC
New Windsor, NY
*Counsel for Defendant Village of Monticello*

David L. Posner, Esq.
Kimberly H. Lee, Esq.
McCabe & Mack LLP
Poughkeepsie, NY
*Counsel for Defendant Town of Thompson*

KENNETH M. KARAS, District Judge:

    Pro se Plaintiffs Claude A. Staten ("Staten") and Sherrill L. Pressley ("Pressley") (collectively, "Plaintiffs") filed the instant Amended Complaint pursuant to 42 U.S.C. §§ 1981 and 1983 against the Village of Monticello ("Monticello") and the Town of Thompson in

Sullivan County ("Thompson") (collectively, "Defendants"), alleging that they were "victim[s] of [r]ace discrimination, harassment, retaliation, [and] forging[, using, and faxing] official documents." (Am. Compl. ("AC") ¶ II.B (Dkt. No. 35).) Before the Court are Defendants' Motions To Dismiss the Amended Complaint (the "Motions") pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. Nos. 40, 47.) For the reasons explained herein, Defendants' Motions are granted.

## I. Background

### A. Factual Background

The following facts are drawn from Plaintiffs' Amended Complaint, the documents appended thereto, and the filings that Plaintiffs submitted in opposition to the instant Motions, and are taken as true for the purpose of resolving the Motions. The Amended Complaint is identical to the original Complaint except as identified below. Therefore, what follows is an abbreviated account of the facts giving rise to this Action.[1]

Plaintiffs assert that Staten is a "Black Hispanic male," who is a police officer employed by the New York City Police Department ("NYPD"). (AC ¶¶ III.C.10–11.)[2] The conduct giving rise to this Action begins with an incident that occurred on July 29, 2006 at Staten's home in the Village of Monticello, in the Town of Thompson in Sullivan County. (*Id.* ¶ III.C.12.) On that date, Plaintiffs assert that Sullivan County Deputy Sheriff Davis ("Davis") and, subsequently, New York State Police Trooper Belgiovene ("Trooper Belgiovene") responded to a domestic

---

[1] For a full recitation of the facts and procedural history of this case, see the Court's prior Opinion & Order issued in October 2015. (*See* Dkt. No. 31.)

[2] Plaintiffs describe the NYPD as a "co-defendant" in this case, (AC ¶ III.C.11), but the NYPD is not listed as a defendant in the instant Action, (*see id.* ¶¶ III.C.6–7). In any event, the NYPD is not a suable entity. *See Noonan v. City of New York*, No. 14-CV-4084, 2015 WL 3948836, at *2 (S.D.N.Y. June 26, 2015) ("As an agency of the City of New York, the NYPD is a non-suable entity.").

incident involving Staten's "then common[-]law wife" Pressley, a "Black Hispanic female," and another woman named Latasha Grove ("Grove"). (*Id.* ¶¶ III.C.12, 34.) Plaintiffs allege that Davis investigated the incident and prepared a report that did not include any details finding Staten to be at fault, though he did remove "two hand guns" from Staten's home. (*Id.* ¶¶ III.C.16, 23.)

Following the incident, Plaintiffs allege that Davis's report, together with a second "forged" report that Davis also allegedly produced relating to the same incident, were faxed from the Sullivan County Sheriff's Department to the 46th precinct of the NYPD, which is where Staten was assigned at the time of the incident. (*Id.* ¶¶ III.C.11, 17–20.) Plaintiffs contend that the second report faulted Staten for the domestic incident, indicating that Staten struck Pressley while his children were watching, and concluded that the children were in danger given that this physical altercation had occurred with guns in the home. (*Id.* ¶ III.C.19.) Plaintiffs also contend that, in August 2006, Sullivan County Child Protective Services arrived at Staten's residence with a copy of the allegedly forged report, and that, in response, Pressley "presented a copy of the original . . . report." (*Id.* ¶ III.C.22.) Both Pressley and a social worker immediately identified the differences between the reports. (*Id.*)

Plaintiffs further allege that when Staten attempted to retrieve his handguns from the Sullivan County Sherriff's Department in September 2007, he was told by Lieutenant Boyd ("Boyd") that the Sheriff's Department "did what [Staten's] department asked [it] to do." (*Id.* ¶ III.C.25 (internal quotation marks omitted).) Boyd allegedly stated that if Staten was "going after anybody [he] better go after [his department in New York City], because [Sullivan County officers] [were not] going to take a hit[] because of [Staten] and [his] department," and that otherwise Staten would not "be able to live [in Sullivan County]" anymore. (*Id.* (internal quotation marks omitted).) Staten was able to retrieve his guns, but when he asked Boyd if he

3

was "threatening" him, Boyd replied, "You can take it however you want. Just take your guns and get out of here." (*Id.* (internal quotation marks omitted).)

Based on these allegations, Plaintiffs assert that "the Town of Thompson along with the Sullivan County Sheriff's Department . . . conspired to violate [Staten's] civil and constitutional rights" when "members of the Sullivan County Sheriff's Department" did "knowingly and deliberately" fax forged documents to Staten's employer "[w]ith the intention[] of damaging, or ending . . . [his] career due to hatred[] of both [his] color and . . . race." (*Id*. ¶ III.C.33.)

Several years later, on August 29, 2013, Plaintiffs allege that Pressley was subject to racial discrimination during a motor vehicle accident, wherein she "struck a parked car" in foggy conditions in the Village of Monticello. (*Id*. ¶ III.C.26.) Plaintiffs contend that Monticello Police Officer Jake Miller ("Miller"), a Caucasian, and, subsequently, Supervisor Corporal Davis ("Davis") responded to the scene of the accident. (*Id*. ¶¶ III.C.27, 34.)[3] Miller allegedly prepared an accident report, and Davis allegedly directed Miller to issue Pressley a speeding ticket, despite having "not witness[ed]" her driving, there being "no skid marks . . . present," there being "no electronic recording" of her speed, and there otherwise being no "effective[] determin[ation] [of the] speed traveled." (*Id*. ¶¶ III.C.28–29.) Plaintiffs assert that the ticket was issued "without [p]rima [f]acie cause . . . based on [Pressley's] race." (*Id*. ¶ III.C.34.)

Plaintiffs allege that Pressley also suffered from subsequent harassment. (*Id*. ¶ III.C.32.) Specifically, Plaintiffs contend that at 2:00 a.m. on December 5, 2013, Davis stopped Pressley in a McDonald's parking lot while she was driving Staten's car. (*Id.*) During the stop, according to

---

[3] It appears that Supervisor Corporal Davis and Sullivan County Deputy Davis are one in the same. (*See* AC ¶ III.C.27 ("Police Officer Miller was joined by his Supervisor Corporal Davis of the Monticello Police Department, and the former Sullivan County Sheriff's Deputy who arrived at . . . [Staten's] home [on] July 29, 2006, and prepared the domestic incident report.").)

4

Plaintiffs, Davis "never asked for documents," asked "who the vehicle was registered to[,]" and informed Pressley "the reason for the stop . . . was because the vehicle exhaust was too loud." Davis told Pressley, "Just get it fixed." (*Id*. (internal quotation marks omitted).)

Plaintiffs further allege that Thomas Belgiovene ("Officer Belgiovene"), a Thompson code enforcement officer, "harassed" Staten "for a number of years" and "abused his authority in order to attack . . . [Staten]," namely by taking "part with the Town of Thompson[,] which was his employer[,] to prevent [Staten] . . . from expanding on, and building on[, his] property." (*Id*. ¶¶ III.C.13–14.)[4]

The Amended Complaint contains new allegations concerning an event that allegedly occurred on October 9, 2015. (*Id*. ¶ III.C.32.) Plaintiffs allege that three unidentified police officers arrived at Staten's house at 6:15 a.m. dressed in tactical gear. (*Id*.) The officers were observed peeking through the windows of the house, which frightened Staten's 16-year-old daughter ("C.S."), who at that time was "not dressed." (*Id*.) After C.S. got dressed and asked who was on her front porch, she opened the front door. (*Id*.) Upon opening the door, C.S. was "interrogated" by one of the police officers and shown a wanted poster. (*Id*.) C.S. was unable to identify the individual in the poster. (*Id*.) The police officers then asked where her parents were. C.S. stated that her mother, Pressley, was at work, and her father was not home. (*Id*.) The officers requested that C.S. call Pressley and after C.S. did so the officers "interrogated" Pressley over the phone for more than five minutes. (*Id*.) In total, the officers remained at Staten's house for over 40 minutes. (*Id*.)

---

[4] Officer Belgiovene is the father of Trooper Belgiovene. (AC ¶ III.C.13.)

B.  Procedural History

Staten filed a Complaint on June 25, 2014, alleging that he was "a victim of race discrimination, harassment, retaliation, [and] forging[, using, and faxing] official documents," and seeking "compensatory and punitive damages in the amount of 5,000,000 dollars." (Compl. ¶¶ II.B, V.)

In November 2014, Defendants moved to dismiss Staten's Complaint.  On October 26, 2015, the Court issued an Opinion & Order (the "2015 Opinion") granting Defendants' Motions To Dismiss.  (*See* Opinion & Order ("2015 Opinion") 26–27 (Dkt. No. 31).)  The Court's dismissal was without prejudice and provided Staten 30 days to file an Amended Complaint. (*Id*.)

Plaintiffs filed the Amended Complaint on February 4, 2016.[5]  Pursuant to memo endorsements setting schedules for filing motions, (Dkt. Nos. 38–39), Defendant Thompson filed its Motion To Dismiss and supporting papers on March 10, 2016, (Dkt. Nos. 40–43), and Defendant Monticello filed its Motion To Dismiss on the same day, (Dkt. Nos. 47–50). Plaintiffs filed opposition papers on April 11, 2016.  (Dkt. Nos. 54–55.)  Defendant Thompson filed a reply on April 18, 2016, (Dkt. No. 56), and Defendant Monticello filed a reply on April 25, 2016, (Dkt. No. 60).

---

[5] Pressley was added as a plaintiff in the Amended Complaint.  Thompson contends that Pressley is not a proper plaintiff in this Action because Staten cannot add a new party to an amended pleading without leave of the Court and the issuance of a summons and service of process. (Def. Thompson's Mem. of Law in Supp. of Mot. To Dismiss 5 (Dkt. No. 43).)  This argument is off the mark.  In the 2015 Opinion, the Court addressed at length Staten's inability to file suit on Pressley's behalf—a clear indication that Staten should seek to include Pressley as a party to this Action. (2015 Opinion 13–14.)  The 2015 Opinion also granted Staten 30 days in which to amend his Complaint.  (*Id*. at 27.)  Staten accepted that opportunity and Pressley joined the suit as a plaintiff.

II.  Discussion

A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the 'grounds' of his [or her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (citations omitted).  Instead, the Supreme Court has emphasized that "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563.  A plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.  But if a plaintiff has "not nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))).

For the purposes of Defendants' Motions, the Court is required to consider as true the factual allegations contained in the Amended Complaint.  *See Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) ("We review de novo a district court's dismissal of a complaint pursuant to Rule 12(b)(6), accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor." (internal quotation marks and italics omitted));

*Gonzalez v. Caballero*, 572 F. Supp. 2d 463, 466 (S.D.N.Y. 2008) (same). "In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted).

Because Plaintiffs are proceeding pro se, the Court construes their "submissions . . . liberally" and interprets them "to raise the strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (alteration in original) (internal quotation marks omitted). Furthermore, for the same reason, it is appropriate to consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (internal quotation marks omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010); *see also Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) (noting that a court may consider "factual allegations made by a pro se party in his papers opposing the motion"); *Rodriguez v. Rodriguez*, No. 10-CV-891, 2013 WL 4779639, at *1 (S.D.N.Y. July 8, 2013) ("Although the Court is typically confined to the allegations contained within the four corners of the complaint, when analyzing the sufficiency of a pro se pleading, a court may consider factual allegations contained in a pro se litigant's opposition papers and other court filings." (citations and internal quotation marks omitted)).

B.  Analysis

Defendants move to dismiss Plaintiffs' Amended Complaint on several grounds. Defendants both argue that Plaintiffs' Amended Complaint fails to remedy the defects identified by the Court in the 2015 Opinion; namely, that Plaintiffs fail to allege the existence of any policy

8

or practice that caused the alleged harm under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). Monticello also argues that Plaintiffs' claims stemming from the July 29, 2006 domestic incident are barred by the statute of limitations.

### 1. Statute of Limitations

Although "[t]he lapse of a limitations period is an affirmative defense that a defendant must plead and prove[,]" a statute of limitations defense may be "raise[d] . . . in a pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008); *see also Zhou v. Wu,* No. 14-CV-1775, 2015 WL 925962, at *3 (S.D.N.Y. Mar. 3, 2015) (same).

Because § 1983 "does not provide a specific statute of limitations," "courts apply the statute of limitations for personal injury actions under state law." *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013); *see also Ormiston v. Nelson*, 117 F.3d 69, 71 (2d Cir. 1997) (finding that in considering § 1983 claims, courts should apply "the general or residual state statute of limitations for personal injury actions" (alterations and internal quotation marks omitted)). Therefore, "[§] 1983 actions filed in New York are . . . subject to a three-year statute of limitations." *Hogan*, 738 F.3d at 517; *see also Ormiston*, 117 F.3d at 71 (explaining that "New York's three-year statute of limitations for unspecified personal injury actions, New York Civil Practice Law and Rules § 214(5), governs [§] 1983 actions in New York"). Section 1981 claims are likewise governed either by the same three-year statute of limitations that applies to § 1983 claims, *Mian v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993); *Harmon v. Patrolman's Benevolent Ass'n of City of N.Y.*, No. 05-CV-589, 2005 WL 2847256, at *2 (E.D.N.Y. Oct. 31, 2005) ("Claims brought under §§ 1981 and 1983 in New York are generally governed by New York's residual three-year statute of limitations for personal injury

9

claims.").[6]

The original Complaint was filed on June 25, 2014, nearly eight years after the July 29, 2006 incident. (*See* Compl.) Accordingly, "absent facts supporting a continuing violation or the application of the doctrine of equitable tolling," *Amoroso v. United Techs. Corp.*, No. 00-CV-432, 2000 WL 1731340, at *3 (D. Conn. Nov. 6, 2000), Plaintiffs are barred from bringing any § 1981 or § 1983 claims arising from that incident.[7] In opposition to Monticello's argument, Plaintiffs invoke the "Continuing Violation Doctrine" because the July 29, 2006, August 29, 2013, and December 5, 2013 incidents all evince Davis's continued attempts to harass Plaintiffs. (Pls.' Mem. of Law in Opp'n to Monticello's Mot. To Dismiss 3 (Dkt. No. 55).)[8]

Plaintiffs have again failed to allege any factual connection between the actions of Davis and Boyd in 2006 and any subsequent incidents. Given that over seven years passed between the alleged events in 2006 and the events in 2013, any potential claim arising out of the 2006 incident cannot be deemed part of the same continuing violation as the events that occurred in 2013. *See Annis v. County of Westchester*, 136 F.3d 239, 246 (2d Cir. 1998) (explaining that because there was a "six-year gap . . . between discriminatory events" the "discrimination [the plaintiff] suffered before and after the gap [could not] be joined as a 'continuing violation'"); *Rebrovich v. County of Erie,* 544 F. Supp. 2d 159, 169 (W.D.N.Y. 2008) (noting that the

---

[6] "However, if a claim under § 1981 was made possible by the 1991 amendments to § 1981, which extended the statute to include claims of discrimination in the conditions of employment, the claim is governed by the four-year statute of limitations set forth in 28 U.S.C. § 1658(a)." *Harmon*, 2005 WL 2847256, at *2. Because Plaintiffs do not allege employment discrimination claims, their claims are governed by the three-year statute of limitations.

[7] Plaintiffs do not allege any basis for tolling the statute of limitations.

[8] Plaintiffs invoke the "Continuing Violation Doctrine" against Thompson as well. (*See* Pls.' Mem. of Law in Opp'n to Thompson's Mot. To Dismiss 3 (Dkt. No. 54).)

continuing violation doctrine is appropriate only in "compelling circumstances," where "the unlawful conduct takes place over a period of time, making it difficult to pinpoint the exact day the violation occurred; where there is an express, openly espoused policy that is alleged to be discriminatory; or where there is a pattern of covert conduct such that the plaintiff only belatedly recognizes its unlawfulness" (internal quotation marks and alteration omitted)). Monticello's Motion is therefore granted to the extent that Plaintiffs' claims rely on the July 29, 2006 incident.[9]

### 2. *Monell*

Even if Plaintiffs' claims arising out of the July 29, 2006 incident were timely, because the only named defendants are municipalities, Plaintiffs must state a claim under *Monell* in order for their lawsuit to survive Defendants' Motions. As discussed below, Plaintiffs have failed to do so.

"Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell*, 436 U.S. at 691.[10] Thus, "to prevail on a claim against a municipality under [§] 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*,

---

[9] To the extent Plaintiffs' claims arising from the July 29, 2006 incident can be construed to assert claims against the officers involved, those claims are dismissed for the same reason.

[10] The same analysis applies to § 1981 claims. *See, e.g.*, *Edwards v. Jericho Union Free Sch. Dist.*, 904 F. Supp. 2d 294, 310 (E.D.N.Y. 2012) ("[T]o establish municipal liability for a [§] 1981 claim, a plaintiff must meet the standards articulated by *Monell* and its progeny."); *Philippeaux v. N. Cent. Bronx Hosp.*, 871 F. Supp. 640, 655 (S.D.N.Y. 1994) ("[M]unicipal liability for public officials' violations of [§] 1981 must be found under [§] 1983 using the *Monell* analysis.").

542 F.3d 31, 36 (2d Cir. 2008); *cf. Salvatierra v. Connolly*, No. 09-CV-3722, 2010 WL 5480756, at *10 (S.D.N.Y. Sept. 1, 2010) (dismissing claim against municipal agencies where the plaintiff did not allege that any policy or custom caused the deprivation of his rights), *adopted by* 2011 WL 9398 (S.D.N.Y. Jan. 3, 2011). The fifth element reflects the notion that "a municipality may not be held liable under § 1983 solely because it employs a tortfeasor." *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997); *see also Newton v. City of New York*, 566 F. Supp. 2d 256, 270 (S.D.N.Y. 2008) ("As subsequently reaffirmed and explained by the Supreme Court, municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right."). In other words, a municipality may not be liable under § 1983 "by application of the doctrine of respondeat superior." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (italics omitted); *see also Vassallo v. Lando*, 591 F. Supp. 2d 172, 201 (E.D.N.Y. 2008) (noting that "a municipal entity may only be held liable where the entity *itself* commits a wrong"). Instead, there must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988) ("[G]overnmental bodies can act only through natural persons, . . . [and] governments should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights.").

A plaintiff may satisfy the "policy or custom" requirement by alleging "(1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an

extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees." *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted).  Under the third method, "an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Brown*, 520 U.S. at 404; *see also Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir. 1996) (noting that a municipality's custom "need not be memorialized in a specific rule or regulation").  Therefore, a plaintiff may establish municipal liability by "demonstrat[ing] that a policy maker indirectly caused the misconduct of a subordinate municipal employee by acquiescing in a longstanding practice or custom which may fairly be said to represent official policy." *Miller v. County of Nassau*, 467 F. Supp. 2d 308, 314 (E.D.N.Y. 2006).  To prevail on this theory of municipal liability, however, a plaintiff must prove that the custom at issue is permanent and well-settled.  *See Praprotnik*, 485 U.S. at 127 (noting that "the [Supreme] Court has long recognized that a plaintiff may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a custom or usage with the force of law'" (some internal quotation marks omitted) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–68 (1970)).

Accordingly, "a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the [municipality]." *Newton*, 566 F. Supp. 2d at 271; *see also City of Oklahoma v. Tuttle*, 471 U.S. 808, 823–24 (1985) (plurality opinion) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."); *Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002) ("A single incident

13

by itself is generally insufficient to establish the affirmative link between the municipal policy or custom and the alleged unconstitutional violation.").

In the end, "a plaintiff must demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the alleged injury." *Roe*, 542 F.3d at 37 (quoting *Brown*, 520 U.S. at 404); *see also Tuttle*, 471 U.S. at 824 n.8 ("The fact that a municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy *Monell*'s requirement that the particular policy be the 'moving force' behind a *constitutional* violation. There must at least be an affirmative link between[, for example,] the training inadequacies alleged, and the particular constitutional violation at issue."); *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) ("Absent a showing of a causal link between an official policy or custom and the plaintiffs' injury, *Monell* prohibits a finding of liability against the City."); *Johnson v. City of New York*, No. 06-CV-9426, 2011 WL 666161, at *3 (S.D.N.Y. Feb. 15, 2011) (noting that after demonstrating the existence of a municipal policy or custom, "a plaintiff must establish a causal connection—an affirmative link—between the policy and the deprivation of his constitutional rights" (internal quotation marks omitted)).

At the motion to dismiss stage, Plaintiffs need not prove these elements, but they are required to plead them sufficiently to make out a plausible claim for relief. To do so, Plaintiffs "must allege facts tending to support, at least circumstantially, an inference that . . . a municipal policy or custom exists." *Santos v. New York City*, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012).

Because Plaintiffs' Amended Complaint is identical to the Complaint with respect to events occurring before 2015, the Court will not repeat is prior ruling with respect to those events. Those claims remain deficient for the reasons stated in the 2015 Opinion. (*See* 2015

14

Opinion 21–26.)[11]  The Court here focuses on Plaintiffs' claims as they relate to the incident that occurred in October 2015.  Applying the guiding principles described above, Plaintiffs' allegations are insufficient to state a claim under *Monell*.

Plaintiffs' claims as they relate to the incident that occurred in the early morning hours on October 9, 2015 fail on several grounds.  As an initial matter, Plaintiffs fail to plead that the officers that arrived at Staten's house were employed by either Thompson or Monticello.[12]  The Amended Complaint simply states that "the police were sent to [Staten's] home in Sullivan County New York."  (AC ¶ III.C.32.)  Assuming that the officers were in fact employed by Defendants, Plaintiffs' claims must be dismissed because they do not allege a policy, custom, or practice that guided the officers' actions.  *See Kelly v. Ulster County*, No. 12-CV-1344, 2013 WL 3863929, at *4 (N.D.N.Y. July 24, 2013) (dismissing an amended complaint where it "d[id] not even contain 'boilerplate' allegations of a custom, policy[,] or practice").  Plaintiffs' only

---

[11] To the extent Plaintiffs were attempting to assert claims against the individuals involved in the events that occurred in 2013, Plaintiffs have failed to make out a selective treatment claim because they have not alleged a single comparator.  *See LaTrieste Rest. v. Vill. of Port Chester*, 188 F.3d 65, 69 (2d Cir. 1999) (noting that a selective treatment claim requires a plaintiff to allege, among other things, that "the person, compared with others similarly situated, was selectively treated" (internal quotation marks omitted)).  Moreover, Plaintiffs offer no allegations that the individuals acted out of discriminatory animus.  *See Burroughs v. Dorn*, No. 13-CV-3609, 2013 WL 3820673, at *7 (E.D.N.Y. July 22, 2013) ("[The] [p]laintiff's bare allegations of racial . . . discrimination, devoid of any accompanying factual basis, do not state a [§] 1983 claim against the defendants for violations of [the] plaintiff's rights to equal protection.").

[12] In support of its Motion, Thompson submitted an affidavit from its attorney stating that Thompson does not have a police department nor police officers in its employ.  (*See* Michael Mednick Aff. in Supp. of Thompson's Mot. To Dismiss ¶ 3 (Dkt. No. 58).)  Monticello has also submitted an affidavit from its Police Chief, who states that the police department has no records indicating that Monticello police officers were present at Staten's house on October 9, 2015.  (*See* Robert Mir Aff. in Supp. of Monticello's Mot. To Dismiss ¶ 4 (Dkt. No. 49).)  Nonetheless, for purposes of these Motions, the Court will assume that the police officers were employed by Defendants.

mention of a custom or policy consists of an allegation found in their opposition papers that it is "common practice and procedure [for] any law enforcement agency entering the geographical zone of employment of another agency to first inform that agency of their presence out of courtesy and respect, but more importantly due to safety reasons in order to prevent injury." (Pls.' Mem. of Law in Opp'n to Thompson's Mot. To Dismiss ("Pls.' Opp'n to Thompson's Mot.") 2 (Dkt. No. 54).)[13]  Even if Defendants did honor this "common practice," there is no causal link between the policy and the alleged injury. *See Kelly*, 2013 WL 3863929, at *4 ("[The] [p]laintiff's failure to plead that a custom, policy[,] or practice was responsible for his alleged deprivation of his constitutional rights warrants dismissal."); *Brandon*, 705 F. Supp. 2d at 277 ("[A] [p]laintiff must also prove a causal link between the policy, custom[,] or practice and the alleged injury in order to find liability against a municipality.").  Nor have Plaintiffs alleged that the officers present at Staten's house on October 9, 2015 were policymakers such that they acted with final policy-making authority, or that the officers were inadequately trained or supervised. *See Johnson*, 2011 WL 666161, at *3–4 (dismissing a complaint where the plaintiff "never specifie[d] the policy or custom to which he was subjected when his constitutional rights were allegedly violated," failed to allege that the "wrongdoers acted with final policy-making authority with respect to decisions that caused [the] [p]laintiff's alleged constitutional deprivations," and did not allege "a failure to train or supervise").  Absent these allegations, Plaintiffs have failed to state a *Monell* claim.[14]

---

[13] In their opposition, Plaintiffs admit that the officers were not acting pursuant to a custom or practice, but were nonetheless violating their rights as protected by the Constitution. (*See* Pls.' Opp'n to Thompson's Mot. at 4 ("[T]he presence of the officers was not pursuant to a Town policy, custom[,] or practice as the rights protected by the constitution have in fact been violated.").)

[14] To the extent Plaintiffs wish to assert claims against the officers involved in the October 2015 incident, they have failed to identify them such that the officers could be served.

Accordingly, the Amended Complaint is dismissed.

### 3. New York Law Claims

To the extent that Plaintiffs intended to state a claim under New York Executive Law § 296, (*see* AC ¶ III.C.4), that claim is dismissed without prejudice because the Court has dismissed Plaintiffs' federal claims. The Court therefore declines to exercise supplemental jurisdiction over Plaintiffs' state law claims. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial . . . the state claims should be dismissed as well."); *McGugan v. Aldana–Bernier*, No. 11-CV-342, 2012 WL 1514777, at *8 (E.D.N.Y. Apr. 30, 2012) ("[W]hen all federal claims are eliminated in the early stages of litigation, the balance of factors generally favors declining to exercise pendent jurisdiction over remaining state law claims and dismissing them without prejudice."), *aff'd*, 752 F.3d 224 (2d Cir. 2014).

---

Nor have they plausibly alleged that the officers violated the Constitution or some other federal law.

### III. Conclusion

In light of the foregoing analysis, the Court grants Defendants' Motions.[15] The Clerk of Court is respectfully directed to terminate the pending Motions, (Dkt. Nos. 40, 47), and to close the case.

SO ORDERED.

DATED:   December 12, 2016
         White Plains, New York

                                                _____
                                                KENNETH M. KARAS
                                                UNITED STATES DISTRICT JUDGE

---

[15] As this Court's ruling is grounded on Plaintiffs' failure to plead a federal cause of action, and Plaintiffs have already been provided with a second opportunity to do so, the dismissal of Plaintiffs' §§ 1981 and 1983 claims is with prejudice. *See Denny v. Barber*, 576 F.2d 465, 471 (2d Cir. 1978) (holding that the plaintiff was not entitled to "a third go-around"); *Melvin v. County of Westchester*, No. 14-CV-2995, 2016 WL 1254394, at *24 n.19 (S.D.N.Y. Mar. 29, 2016) (granting motion to dismiss with prejudice where "[the] [p]laintiff has already had two bites at the apple, and they have proven fruitless" (alteration and internal quotation marks omitted)).